UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No: 1:11-CR-41 |
| v. ) | |
| ) | |
| BILLY WAYNE LOCKE A/K/A ) | Judge Curtis L. Collier |
| "BILLY LOCK" ) | |

### MEMORANDUM

On August 6 and 13, 2012, Defendant Billy Wayne Locke ("Defendant") filed *pro se* motions to suppress any and all evidence seized from his camper trailer (Court File Nos. 58, 61). Defendant also filed a supplement and three letters in support of his motions to suppress (Court File Nos. 62, 64-66). Defendant's motions were referred to United States Magistrate Judge Susan K. Lee, who held a hearing and subsequently filed a report and recommendation (R&R) recommending Defendant's motions be denied (Court File No. 69). Defendant timely objected (Court File No. 73), and the Government responded (Court File No. 76). For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 69). Defendant's motions to suppress will be **DENIED** (Court File Nos. 58, 61).[1]

### I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

---

[1] Defendant has submitted other supplemental documents raising nearly identical arguments as those made in his original motions to suppress (Court File Nos. 70, 71, 77, 80, 81, 82). Among the filings are a "Motion to Suppress or to Dismiss" (Court File No. 71), two motions to dismiss (Court File Nos. 77, 80), and a "Motion to Suppress Evidence and to Dismiss Case" (Court File No. 81). For the same reasons the Court has concluded Defendant's original motions to suppress should be denied, the Court also will **DENY** Defendant's subsequently filed motions to suppress and/or motions to dismiss (Court File Nos. 71, 77, 80, 81).

### A. Factual Background

The Court will summarize the relevant factual findings made by the magistrate judge and identify Defendant's objections to those findings later in this memorandum. The Court incorporates those portions of the magistrate judge's findings to which objections have not been made.

On February 15, 2011, an officer with the City of Etowah Police Department attempted a traffic stop on Defendant. The officer knew Defendant did not have a valid driver's license. Defendant fled, which resulted in a high-speed pursuit by law enforcement. Although the officer chose to end the pursuit, he obtained warrants against Defendant for evading arrest, reckless driving, and driving on a revoked or suspended driver's license.

Defendant was observed by a McMinn County, Tennessee sheriff's deputy on February 16, 2011, around 4:00 p.m., driving recklessly. The officer attempted a traffic stop, but Defendant again evaded arrest. Around 6:25 p.m., a Madisonville, Tennessee officer saw Defendant at a convenience store. The officer tried to arrest Defendant but Defendant fled and, in the process, struck the officer with his vehicle. On February 16, 2011, warrants were issued for Defendant's arrest on charges of aggravated assault, habitual offender, evading arrest, reckless endangerment, resisting arrest, duty to render aid, leaving the scene of an accident, and failure to report. Additional arrest warrants were issued on February 17, 2011.

The Tenth Judicial District Drug and Violent Crime Task Force, which includes McMinn and Monroe counties, assisted in apprehending Defendant. Due to Defendant's criminal history and prior felony convictions, Agent Bill Cherry and other members of the task force were familiar with Defendant. They also were aware Defendant lived in a small camper trailer on his father's property. Officers from several different agencies went to Defendant's home around midnight on February

2

Case 1:11-cr-00041-TRM-SKL Document 84 Filed 10/29/12 Page 2 of 14 PageID #: 344

16, 2011, to arrest Defendant on the outstanding warrants. Agent Mike Patterson heard coughing from, and saw movement in, the trailer. Agent Cherry knocked and announced the presence of law enforcement several times, to which Defendant did not respond. Four officers and a police canine proceeded to enter the unlocked trailer. Defendant refused to respond to the officers' orders and attempted to hide under the covers on his bed in the back of the trailer. Officers had to use three tasers to restrain Defendant. Defendant was arrested sometime after midnight on February 17, 2011. During the arrest, Agent Cherry observed shotgun shells and a speed loader in Defendant's trailer in plain view. While collecting the shells, he observed two additional bullets in plain view, which were also collected.

According to the Register of Prisoners for the McMinn County Jail, Defendant was booked on February 17, 2011, on Monroe County charges of aggravated assault, habitual offender, evading arrest, reckless endangerment, resisting arrest, duty to render aid, leaving the scene of an accident, and failure to report; a Monroe County charge of driving on a revoked or suspended license; and several other McMinn County charges.

Officer Craig Frost, a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), learned of the evidence seized by Agent Cherry. At the evidentiary hearing, both Agent Cherry and Agent Frost testified the shotgun shells were immediately identifiable as ammunition. They also both knew Defendant was a convicted felon and therefore, was prohibited from possessing the ammunition.

Officer Frost asked Defendant for consent to search the camper while Defendant was in custody. Defendant consented but then revoked his consent before the search occurred. Officer Frost then drafted an application and affidavit to obtain a warrant to search Defendant's camper. On

3

February 18, 2011, Officer Frost executed the search warrant and found a fully loaded Derringer revolver, shotgun shells, a shotgun barrel, mail addressed to Defendant, and some drug paraphernalia. The Derringer was under Defendant's mattress. On February 21, 2011, Defendant waived his *Miranda* rights and spoke to Officer Frost. He denied ownership of the Derringer but admitted to hiding the gun under the mattress.

B.     **Procedural Background**

On May 24, 2011, Defendant was indicted by a federal grand jury for possession of a firearm after having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g). Defendant is currently unrepresented by counsel. Although the magistrate judge appointed two attorneys at different times during the case to represent Defendant, Defendant sought new counsel each time because the attorneys would not file his motions to suppress. After the second attorney refused to file his motions to suppress, Defendant decided to proceed *pro se*. The magistrate judge subsequently appointed Defendant elbow counsel, and this attorney assisted Defendant during the suppression hearing.

II.    **STANDARD OF REVIEW**

The Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). However, *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The magistrate judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*,

4

195 F.3d 258, 264 (6th Cir. 1999). The magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III. DISCUSSION

Defendant has filed a litany of objections to the magistrate judge's R&R. Some of the objections pertain to the magistrate judge's factual findings while others pertain to her legal conclusions. Putting aside the sheer number of objections, Defendant's arguments can actually be narrowed down to the following issues already asserted in his motions to suppress: (1) the validity of the arrest warrants; (2) whether the shotgun shells and speed loader were in "plain view" and whether the shotgun shells were "ammunition" as defined in 18 U.S.C. § 921; (3) whether the search warrant was properly issued and executed; and (4) the validity of the traffic stop. Defendant also raises a new evidentiary matter that the Court will address at the outset.

### A. Government's Failure to Offer Evidence

As a preliminary matter, Defendant objects to the Government's failure to offer evidence on two matters at the suppression hearing. Defendant contends the Government withheld evidence when it offered Government Exhibit 1 at the hearing. Government Exhibit 1 included several Affidavits of Complaint from Monroe County dated February 16, 2011, and arrest warrants from McMinn County dated February 17, 2011 (Court File No. 73 at 1). Presumably, Defendant raises this objection because the magistrate judge noted in the R&R that the Government curiously failed to offer copies of the back of the Monroe County complaints into evidence, which is where the arrest

5

warrants are located.[2] Defendant also contends the Government failed to show all of the photographs taken of his camper (*id.*).

Neither of these issues, however, affected the magistrate judge's ability to make the necessary factual findings or this Court's review of those findings. Although the Government failed to provide the back of the Monroe County complaints, the Court still had access to this information in light of Defendant's certified copies of the Monroe County complaints (Def.'s Ex. 1). Moreover, the Government only offered photographs of Defendant's camper deemed relevant to the case. Defendant has not identified any other photographs that would have assisted the magistrate judge in making her factual findings. Accordingly, Defendant's objections are **DENIED**.

### B. Validity of Arrest Warrants

Defendant objects to several of the magistrate judge's factual findings and legal conclusions pertaining to the arrest warrants. Defendant argues law enforcement did not possess valid arrest warrants and, therefore, lacked authority to enter his home. In support of this argument, Defendant contends the arrest warrants were improperly issued and served and he contests the charges on which he was booked at the McMinn County Jail. Defendant also argues that, even if the warrants were valid, law enforcement had no right to enter his home because they lacked sufficient reason to believe he was inside.

After considering Defendant's arguments and the relevant law, the Court concludes law

---

[2] Defendant also objects to the substance of the magistrate judge's statement, which reads as follows: "Oddly enough, the Government did not provide the back of the complaints in its Exhibit 1, *which is where the executed arrest warrants for Monroe County are found*" (Court File No. 69 at 2) (emphasis added). Defendant challenges the conclusion that the arrest warrants were executed (Court File No. 73 at 1). However, in making this statement, the magistrate judge was only noting the arrest warrants at issue (which the Government argued, and the magistrate judge later found, were properly executed) could be found by looking at the back of the complaints.

6

Case 1:11-cr-00041-TRM-SKL   Document 84   Filed 10/29/12   Page 6 of 14   PageID #: 348

enforcement possessed valid arrest warrants and were lawfully inside Defendant's camper at the time of his arrest. Arrest warrants were issued on February 16, 2011, by the clerk of the General Sessions Court of Monroe County, Tennessee, for Driving on a Revoked License; Habitual Offender; Reckless Endangerment; Aggravated Assault (Vehicle); Felony Evading Arrest; Immediate Notice of Accident; Leaving Scene of Accident; Duty to Give Information and Render Aid; and Resisting Stop, Halt, Frisk, and Arrest. Additionally, arrest warrants were issued in McMinn County on February 17, 2011, for Felony Evading; Reckless Endangerment; and Driving While Revoked 5th Offense. With respect to each of these charges, an officer of the court determined probable cause existed to believe Defendant committed the offense.

Defendant objects to the manner in which the arrest warrants were issued as well as their general execution. Defendant argues the McMinn County warrants were not issued until after his arrest. However, based on the Government's evidence establishing Defendant's arrest occurred after midnight on February 17, 2011, and Defendant's failure to offer any evidence to the contrary, the Court cannot conclude the McMinn County warrants were issued in an untimely manner since they were, in fact, dated February 17, 2011. Moreover, it is undisputed the Monroe County warrants were issued prior to Defendant's arrest. Finally, Defendant has not sufficiently raised any other procedural objections pertaining to the arrest warrants that ultimately would have made his arrest unlawful.[3]

---

[3] For example, Defendant contends he was booked at McMinn County Jail for not only charges in McMinn County but also charges in Monroe County. It is evident, however, at a minimum, Defendant was properly booked on McMinn County charges to support his arrest in the instant case. Defendant also challenges the timing of when he was served with the arrest warrants, and the lack of a return stamp on some of the warrants. However, as noted by the magistrate judge, law enforcement is not required to have the actual arrest warrant on hand when making the arrest. *See United States v. Buckner*, 717 F.3d 297, 300-01 (6th Cir. 1983). That Defendant was not served at the time of arrest with a warrant would not necessarily make his arrest invalid. Furthermore, the McMinn County arrest warrants include the officer's return noting Defendant was, in fact, served

7

Accordingly, the arrest warrants authorizing law enforcement to arrest Defendant were valid.

Given that law enforcement had valid arrest warrants at the time of Defendant's arrest, the next consideration is whether law enforcement had authority to enter Defendant's residence. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980).[4] Hence, "an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at that time." *El Bey v. Roop*, 530 F.3d 407, 416 (6th Cir. 2008) (quoting *United States v. Pruitt*, 458 F.3d 477, 483 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit has never clarified whether the appropriate standard to apply is "reasonable suspicion" or "probable cause." *See United States v. Hardin*, 539 F.3d 404, 426 (6th Cir. 2008) (noting "whether *Payton* involves a probable-cause standard or a lesser reasonable-belief standard remains an open question in our circuit"). Nonetheless, this has no bearing on the instant case because, as noted by the magistrate judge, under either the reasonable suspicion or higher probable cause standard, law enforcement had the authority to enter Defendant's residence.

Here, the officers knew Defendant lived in the camper on his father's property and had additional information supporting their belief Defendant was in the camper. Defendant objects to Agent Patterson's supporting testimony by arguing Patterson could not "see" Defendant through the

---

by arrest on February 17, 2011. This alone (even without the other arrest warrants) would have been sufficient to support Defendant's arrest.

[4] Defendant cites *Valdez v. McPheters*, 172 F.3d 1220, 1224 (10th Cir. 1999), for a similar proposition in his brief.

camper. However, as explained in the R&R, Agent Patterson and the other officers surrounded Defendant's small trailer. At that time, they "heard human coughing from, and saw movement in, the trailer" (Court File No. 69 at 3). Based on both the testimony of Agent Patterson and the images offered as exhibits by the Government of Defendant's camper, the Court has no reason to discredit this finding made by the magistrate judge. Moreover, to the extent Defendant is arguing Agent Patterson's testimony is not credible, the Court believes it is appropriate here to "defer to the credibility finding by the magistrate judge who had an opportunity to evaluate the demeanor and consistency of [Agent Patterson's] testimony." *See United States v. Lowe*, No. 3:09-CR-110, 2010 WL 1491417, at *1 (E.D. Tenn. Apr. 12, 2010). The magistrate judge found Agent Patterson's testimony was completely credible.

Because law enforcement possessed a valid arrest warrant and not only had a reasonable suspicion, but also probable cause, to believe Defendant was in the camper, Defendant's objections challenging the validity of the arrest warrant must be **DENIED**.[5]

### C. Plain View Doctrine

Defendant objects to the magistrate judge's finding that law enforcement had the authority to seize his shotgun shells and speed loader at the time of his arrest. Alternatively, even if the shotgun shells were lawfully seized, Defendant contends the incriminating nature of the shells was not apparent because he possessed them lawfully in light of the definition of "ammunition" under

---

[5] In supporting her finding that law enforcement was authorized to enter Defendant's camper pursuant to valid arrest warrants, the magistrate judge notes law enforcement also was aware Defendant had a "history of violently evading the police." Defendant takes issue with this statement. Yet, the magistrate judge did not err in reaching this conclusion given that, among other things, Defendant was charged with running over an officer in an attempt to evade arrest and he engaged officers in multiple high speed chases.

9

18 U.S.C. § 921. Under the plain view doctrine, law enforcement can seize evidence in plain view without first obtaining a warrant under certain circumstances . *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)). For the plain view doctrine to apply, four factors must be satisfied: "(1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object." *Id.* (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). Defendant concedes the shotgun shells were in plain view, but contends law enforcement "searched" for the speed loader (Court File No. 73 at 2). The evidence offered at the suppression hearing, however, shows Agent Cherry observed both the shotgun shells and the speed loader in plain view.[6] Defendant failed to offer any evidence to counter this finding of fact. Moreover, as noted by the magistrate judge, Agent Cherry and other members of the task force were familiar with Defendant and his criminal history and recognized the "incriminating nature" of these objects. Therefore, the plain view doctrine is applicable.

In the alternative, Defendant avers "shotgun shells" do not fall within the statutory definition of "ammunition," and his possession of the shells therefore was lawful. He argues 18 U.S.C. § 921(a)(17)(A) only refers to ammunition for firearms. He contends handguns fall within the definition of "firearms," but not shotguns or rifles. Thus, he argues the shotgun shells seized from his residence were not unlawfully in his possession or incriminating in nature. Section 921(a)(17)(A) defines "ammunition" as "ammunition or cartridge cases, primers, bullets, or propellent powder

---

[6] The magistrate judge also concluded that the testimony of Agent Cherry and the other officers was credible (Court File No. 69 at 1-2).

Case 1:11-cr-00041-TRM-SKL   Document 84   Filed 10/29/12   Page 10 of 14   PageID #: 352

designed for use in any firearm." The definition of "firearm" in § 921(a)(3) includes "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Defendant has failed to offer any evidence demonstrating the shotgun shells were not designed for use in a firearm, given that a shotgun is properly considered a firearm. Moreover, as explained in the R&R, Defendant's reliance on *United States v. Thomas*, 111 F.3d 426 (6th Cir. 1997), is misplaced.[7] Accordingly, because the incriminating nature of the shotgun shells was apparent and shotgun shells properly fall within the statutory definition of ammunition, Defendant's objections are **DENIED**.

D.  **Search Warrant**

Defendant further objects to the warrant obtained to search his camper following the arrest. Defendant argues the language in the search warrant was overbroad and the officer's reasons for obtaining the search warrant were pretextual. With respect to the overbreadth argument, the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "While a general order to explore and rummage is not permitted, the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001) (internal citations and quotation marks omitted). A description is generally valid "if it is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999). To the extent a warrant is overbroad, the appropriate solution is to "sever the infirm portion of the search warrant from the remainder which passes constitutional

---

[7] Defendant does not mention *Thomas* in his objections.

11

muster." *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991). Stated differently, that the search warrant is deemed overbroad, "does not doom the entire warrant." *Greene*, 250 F.3d at 477. Instead, it merely "requires the suppression of evidence seized pursuant to that part of the warrant . . ., but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized--on plain view grounds, for example--during their execution)." *Id.* (quoting *United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993)) (internal quotation marks and citations omitted).

Here, Defendant argues the language in the search warrant is overbroad because it "list[s] any and everything about a firearm (legal or not)" (Court File No. 73 at 2). However, because the arresting officers recovered shotgun shells and a speed loader during the initial arrest, the officers had probable cause to believe Defendant may have other related property in his possession such as a firearm, firearm parts, or ammunition, among other things. Law enforcement listed with specificity all items believed to be in Defendant's possession as well as other items typically found in the possession of individuals with firearms. The language used in the search warrant was relevant to law enforcement being able to prove Defendant's alleged violations of the law including, but not limited to, Tenn. Code Ann. § 39-17-1307, Unlawful Carrying or Possession of a Weapon, and Tenn. Code Ann. § 39-17-1324, Offense of Possessing a Firearm During or Attempting to Commit Dangerous Felony.

Defendant also argues the officer's search was pretextual because he "went in looking for firearms and anything to do with firearms," but instead started searching for drugs and drug paraphernalia (Court File No. 73 at 2). Defendant relies on the dissent in *Horton v. California*, 496 U.S. 128, 147-48 (1990) in his motions to suppress to establish the fruits of the search in the instant

12

case must be suppressed. The dissent in *Horton* states that "if an officer enters a house pursuant to a warrant to search for evidence of one crime when he is really interested only in seizing evidence relating to another crime, for which he does not have a warrant, his search is 'pretextual' and the fruits of that search should be suppressed." *Id.* at 147. However, as noted by the magistrate judge, even if the dissent in *Horton* was applicable, law enforcement clearly had a valid search warrant and Defendant has offered no proof to show the officer's search was pretextual. Accordingly, Defendant's objections must be **DENIED**.

### E. Validity of Attempted Traffic Stop

Finally, Defendant objects to the validity of the attempted traffic stop on February 15, 2011. He argues the officer cannot prove he was driving the vehicle at the time of the attempted stop. Therefore, he contends law enforcement had an invalid arrest warrant and entered his home unlawfully. Contrary to Defendant's arguments, however, the Supreme Court has explained law enforcement can conduct a traffic stop when "there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Here, the evidence offered at the suppression hearing is the police officer observed Defendant driving and attempted to stop him because he knew Defendant was unlicensed. Moreover, as explained in the R&R, the Fourth Amendment is inapplicable in this context given that the officer "attempted" to stop Defendant but there was no actual seizure since Defendant evaded law enforcement. *See United States v. Smith*, 456 F. App'x 572, 574 (6th Cir. 2012). Finally, as has been reiterated throughout this memorandum, law enforcement had a valid arrest warrant when they arrested Defendant at his camper. Therefore, even if the arrest warrants from February 15, 2011,

were disregarded, there were countless other charges upon which valid arrest warrants were issued. Accordingly, Defendant's objections to the attempted traffic stop must be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 69). The Court will **DENY** Defendant's motions to suppress (Court File No. 58, 61).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**